UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

W.W. GAY, *et al.*, as Trustees of the
Jacksonville Plumbers & Pipefitters
Local Union 234 Fringe Benefit Funds,

                Plaintiffs,

v.                                            CASE NO. 3:09-cv-1002-J-JBT

BRENCORP, INC., a Georgia
corporation,

                Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Summary Judgment and Incorporated Memorandum of Law in Support ("the Motion") (Doc. 45). Defendant filed a response in opposition to the Motion. (Doc. 49.) In short, the Court does not find Defendant's conduct clear enough to evidence an intent to be bound by the subject collective bargaining agreement ("CBA") at least for purposes of summary judgment. In the light most favorable to Defendant, Defendant's conduct could be viewed as consistent with its own proposed agreement relating to only one project. As to the other issues raised by Plaintiffs, the Court also denies summary judgment because there is no Eleventh Circuit precedent cited precisely on point, and the issues overlap with the remaining issues in the case. Therefore, the Motion is due to be **DENIED**.

**I.    Introduction**

Plaintiffs allege that they are trustees of the Jacksonville Plumbers & Pipefitters Local Union 234 Fringe Benefit Funds, which include the Health and Welfare Fund and the Pension Fund (collectively, "the Fund"). (Doc. 1 at 2.) Plaintiffs brought this action under Sections 502(a)(3), 502(g)(2), and 515 of the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145, as well as Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185(a), asserting what is essentially a breach-of-contract claim. (Doc. 1 at 1-5.)

Plaintiffs allege that Defendant entered into two CBAs. The first CBA covered the period from September 1, 2004 through August 31, 2007 (*id.* at 7) ("the First CBA"),[1] and the second CBA covered the period from September 1, 2007 through August 31, 2010 (*id.* at 26) ("the Second CBA"). Plaintiffs allege that, pursuant to the CBAs, "Defendant was required to employ union labor within the trade and territorial jurisdiction of the [CBAs] and pay fringe benefits contributions required by said agreements to the trust funds of which Plaintiffs are trustees." (*Id.* at 2.) Plaintiffs further allege:

> Defendant has failed to employ union labor while working in the trade and territory covered by [the CBAs] and has failed to submit contribution reports and the required payments to [the Fund] pursuant to the terms of the [CBAs] by which it is bound, all in violation of its contractual obligations and its obligations under applicable federal statutes.

(*Id.* at 3.) Defendant denies that it entered into the CBAs, and therefore, denies that it is bound by the terms contained therein. (Doc. 25 at 1.)

In the Motion, Plaintiffs state that "Defendant has admitted that it did work in the territory during the term of the CBA and did not use union labor for such work. Accordingly, the only issue before the Court is whether the Defendant is bound by the

---

[1] While the First CBA did cover this entire period, according to Plaintiffs' allegations, Defendant did not become bound by it until August 3, 2007. (Doc. 1 at 2; Doc. 45 at 3.)

CBA." (Doc. 45 at 4.) Plaintiffs further state that "counsel for the Defendant has stipulated that whether Brencorp is bound by the CBA is the only issue at this stage of the proceeding." (*Id.*)

## II. Factual Background

For purposes of summary judgment, it appears that the following facts are not in dispute, unless otherwise indicated. Any disputed facts are viewed in the light most favorable to Defendant, as the non-moving party.

In 2007, Kenneth Welchel ("Welchel"), who worked for Brencorp but was also a union member of Local 72 of the Plumbers, Steamfitters & Service Technicians in Atlanta, Georgia (Doc. 45-11 at 5-6), showed up at the union hall of the Jacksonville Plumbers & Pipefitters Local Union 234 ("Local 234") to discuss using Local 234's labor on a job that Brencorp had recently been awarded at the Anheuser-Busch ("A-B") facility in Jacksonville, Florida. (Doc. 45-9 at 37.) Welchel met with Jimmy Johnson ("Johnson"), who was a business manager for Local 234, and told him that Brencorp was interested in entering a CBA with Local 234, but only for that particular job. (*Id.* at 42.) Johnson told Welchel that Local 234 would agree only to the standard three-year CBA that it had with all the other contractors. (*Id.*) Welchel said that he would relay Local 234's position to Ted Brennan ("Brennan"), president of Defendant, Brencorp. (*Id.* at 43.) Welchel returned to the union hall a day or two later, met with Johnson again, and repeated Brencorp's interest in signing a one-job agreement. (*Id.* at 46.) Johnson again expressed Local 234's position that it would not sign a one-job agreement. (*Id.*)

On July 31, 2007, Brennan sent a letter to Local 234, stating the following:

> Please except [sic] this letter as our commitment with Plumbers & Steamfitters Local 234.
>
> We agree to hire and pay all wages and benefits for any employees that Local 234 sends to us per the breakdown of your Collective Bargaining Agreement and Pay Scale. All benefits will be paid to the appropriate fund office.
>
> Terms and conditions of this agreement will be to perform piping work at the Anheuser-Busch Jacksonville Brewery for the piping work associated with the Piping Modification Project No. 4890 BP 300. Upon completion of the above said project, this agreement will self terminate.
>
> I hope that this satisfies your concerns and I look forward to a successful project.

(Doc. 45-2 at 2, 45, 50.) Johnson received this letter on August 2, 2007. (Doc. 45-10 at 29.) That same day, Johnson spoke with Brennan about the letter and again told Brennan that Local 234 was not interested in a one-job agreement, but that it would be interested in entering into the standard three-year agreement. (*Id.* at 30-31.) Johnson then sent Brennan by overnight mail two signed copies of the standard CBA and a letter, which stated the following:

> Please find enclosed two copies of Local 234's [CBA], wage and fringe sheet and a letter confirming the obligation of Brencorp, Inc. to pay the drug testing cost of $45.00 per employee tested for your company.
>
> I hope you will find the [CBA] acceptable. We have no intention of trying to obligate Brencorp, Inc. to anything different than our local contractors agree to.
>
> Please sign and return to us one of the [CBAs] and the drug testing authorization letter.
>
> I do look forward to working with you.

(Doc. 45-5 at 30; Doc. 45-10 at 32-33.)  Brennan never signed or returned either copy of the CBA, nor did he otherwise respond to the letter.  (Doc. 45-10 at 33.)

On August 3, 2007, with Brencorp's project scheduled to begin the following week, Welchel went to Local 234's union hall and signed the First CBA.  (*Id.*; Doc. 45-11 at 17.)  That same day, Welchel also signed the "drug testing authorization letter" referenced above in Johnson's August 2, 2007 letter to Brennan.  (Doc. 45-11 at 19-20; 45-5 at 32.)  Brencorp began work at A-B with Local 234's labor.  As the First CBA was set to expire on August 31, 2007, Johnson sent the Second CBA, effective September 1, 2007 through August 31, 2010, to the A-B job site, and Welchel signed it as well.  (Doc. 45-10 at 24.)

For the duration of this A-B job, which lasted from August 2007 through June 2008, Brencorp utilized labor provided by Local 234.  (Doc. 45-2 at 4, 51.)  Brencorp submitted reports on the labor and paid contributions to the Fund for all such labor.  (Doc. 45-1 at 2.)  These payments were in an amount that was required by the CBA.  (Doc. 45-2 at 5, 52.)

After June 2008, Brencorp performed work within the scope and territory defined in the CBAs. (Doc. 45-2 at 5, 52.)  However, it did not utilize union labor to perform that work and did not make any contributions to the Fund based on that work.  (*Id.*)  When Plaintiffs became aware of this, they requested that Defendant perform its alleged obligations under the CBA.  (Doc. 1 at 4.)  Defendant refused.  (*Id.*)  Plaintiffs then filed the present action.

5

### III. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making this determination, the Court "'must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.' 'All reasonable doubts about the facts should be resolved in favor of the non-movant.'" *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004) (citations omitted). "The moving party bears the burden of production. If the moving party meets this burden, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.' 'Speculation does not create a *genuine* issue of fact.'" *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008) (citations omitted). Summary judgment must be granted, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2]

### IV. Analysis

Plaintiffs concede that "there are disputed issues of material fact with respect to whether Ken Welchel had authority to sign the two CBAs" (Doc. 45 at 10), and thus,

---

[2] Federal Rule 56 was amended, effective December 1, 2010. *See* FED. R. CIV. P. 56 advisory committee's note. However, the standard for granting summary judgment was unaffected. *See In re Harwell*, 628 F.3d 1312, 1317 n.4 (11th Cir. 2010) (citation omitted).

they do not seek summary judgment on that issue. Thus, for purposes of deciding the Motion, the Court must assume that Welchel did not have authority to sign the CBAs. However, Plaintiffs move for summary judgment on the basis that Defendant is nevertheless bound by the terms of the CBAs because Defendant "manifested conduct evidencing an intention to abide by the terms of the CBA." (Doc. 45 at 6, 10.)

In addition, Plaintiffs request summary judgment on several other issues, including the validity of two of Defendant's affirmative defenses. (*Id.* at 6-7.) Plaintiffs seek a summary-judgment ruling that "[l]ack of compliance with a condition precedent is not a valid defense to the claims made by the Trustees on behalf of the [Fund]," and that "[n]either unilateral mistake of fact nor mutual mistake of fact is a valid defense to the claims made by the Trustees on behalf of the [Fund]." (*Id.*) Further, Plaintiffs contend that parol evidence is not admissible to vary the terms of the CBA. (*Id.*)

The Court considers the issue of whether Defendant is bound by the terms of the CBA by manifesting "conduct evidencing an intention to abide by the terms of the CBA" (Doc. 45 at 6, 10) to be the central issue, and thus, will discuss it first.

A.   **Conduct Evidencing Intent to Be Bound by CBA**

"As under the National Labor Relations Act, our resolution of this contract-formation dispute is guided by the general common law of contracts. In light of the important federal policy favoring the existence of collective-bargaining agreements, however, contract law may be given a liberal interpretation." *E. Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 861 F.2d 1546, 1550 (11th Cir. 1988) (citations omitted); *see also Turner v. Am. Fed'n of Teachers Local 1565*, 138 F.3d 878, 882 (11th Cir. 1998) ("It is

beyond dispute that the substantive law to be applied in suits under section 301(a) [of the LMRA] 'is federal law, which courts must fashion from the policy of our national labor laws.'" (citation omitted)); *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 457 (1957) ("[S]tate law, if compatible with the purpose of [§] 301, may be resorted to in order to find the rule that will best effectuate the federal policy.").

"It is well settled that a union and employer's adoption of a labor contract is not dependent on the reduction to writing of their intention to be bound. Instead, what is required is conduct manifesting an intention to abide by the terms of an agreement." *NLRB v. Haberman Constr. Co.*, 641 F.2d 351, 355-56 (5th Cir. 1981) (en banc) (citations omitted). In this vein, Plaintiffs argue that Defendant "manifested conduct evidencing an intention to abide by the terms of the CBA." (Doc. 45 at 6.) Further, Plaintiffs state:

> [I]t is undisputed that, after the CBAs were signed, Local 234 provided union labor to Brencorp, Brencorp utilized such labor for approximately one (1) year, and Brencorp submitted reports to the Fringe Benefit Funds on such labor and paid fringe benefit contributions on such labor. All of the checks for payment of such fringe benefit contributions, for a period of one (1) year, were approved and electronically signed by the President of Brencorp. It is the Plaintiffs' contention that such actions alone, irregardless of whether Ken Welchel had authority to sign the two CBAs, manifests an intention to be bound by the two CBAs and manifested intention to ratify Ken Welchel's execution of the CBAs.[3]

(*Id.* at 10.)

The flaw in Plaintiffs' argument, at least at the summary judgment stage, is that,

---

[3] The period of time during which Defendant used Local 234's labor, submitted reports to the Fund, and paid contributions to the Fund appears to have been less than eleven months. (*See* Doc. 45 at 6; Doc. 45-1 at 2; Doc. 45-2 at 4, 5, 51, 52.)

viewed in the light most favorable to Defendant, Defendant's conduct is just as consistent with the more narrow one-job agreement that Defendant proposed by Brennan's July 31, 2007, letter, since all of Defendant's conduct related to that job. Therefore, summary judgment on this issue is not appropriate.

For example, the Restatement of Contracts states that "[t]he manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act." RESTATEMENT (SECOND) OF CONTRACTS § 19 (1981). "Like words, non-verbal conduct often has different meanings to different people. Indeed, the meaning of conduct not used as a conventional symbol is more uncertain and more dependent on its setting than are words. A wide variety of elements of the total situation may be relevant to the interpretation of such conduct." § 19 cmt. a. Since the Court must consider the totality of circumstances to interpret Defendant's conduct, there is a genuine issue of fact to be determined.

Plaintiffs cite several cases in support of their argument. (Doc. 45 at 10.) However, each of the cited cases is distinguishable. Each involved a showing of intent to be bound by the terms of an agreement that was not equally explainable by consistency with a different agreement.

In *Trustees of the Atlanta Iron Workers, Local 387 Pension Fund v. Southern Stress Wire Corp.*, a non-summary judgment case, the Eleventh Circuit held that the district court's finding of a valid contract was not clearly erroneous. 724 F.2d 1458, 1460 (11th Cir. 1983). In that case, the court found: "It is clear from the December 31, 1973, pre-hire agreement with the union that Southern Stress adopted the [CBA]; this

specifically bound Southern Stress to the fringe benefits trust." *Id.* at 1459. In the pre-hire agreement referenced by the court, the employer had expressly agreed to "adopt, abide by and be bound by all of the terms and provisions of the [CBA] . . . with the same force and effect as though the aforesaid [CBA] was set forth here in full." *Id.* at 1460 n. Further, in light of the fact that the employer had abided by the terms of the CBA for over five years, the court found that the employer had "manifested an intent to abide by the [CBA]." *Id.* at 1459-1460. In the present case, there is no agreement similar to the pre-hire agreement in *Southern Stress*. Moreover, Defendant abided by the terms of the subject CBA for less than one year on one specific job, as opposed to the more than five years in *Southern Stress*. In addition, *Southern Stress* was not decided on a summary judgment motion. Finally, there was no competing agreement at issue in *Southern Stress*. For these reasons, *Southern Stress* is distinguishable.

In *Eastern Air Lines*, the Eleventh Circuit affirmed the district court's decision on cross-motions for summary judgment that the parties had formed a CBA. 861 F.2d at 1550-54. In that case, the employer and the union had reduced their agreement to writing, albeit in the form of "a handwritten four-page document peppered with 'buzzwords' and loose phrases." *Id.* at 1548. The district court determined that both parties "displayed an objective intent to be bound" by the handwritten document, and concluded that it was a CBA. *Id.* at 1550. The Eleventh Circuit agreed, and rejected the employer's argument that there was no contract. *Id.* 1550-54. The court analyzed a number of issues regarding whether there was a valid contract, and concluded:

[W]e see a plain course of conduct after the signing of [the handwritten

> CBA] that evinces an intent to be bound by a contract notwithstanding disagreements over certain of its terms. Both parties were aware of disagreement over the interpretation of some contractual language, yet both parties continued to claim that an agreement had been reached.

*Id.* at 1553. Ultimately, the court held that a CBA existed, and submitted to arbitration all disputes regarding the terms of the agreement. *Id.* at 1554-55.

*Eastern Air Lines* is also distinguishable, however, because there was no competing agreement at issue. In this case, Defendant did not evidence "a plain course of conduct . . . evinc[ing] an intent to be bound" by the CBA, since Defendant's conduct is explainable, at least for summary judgment purposes, by its own proposed one-job contract. Moreover, in *Eastern Air Lines* the court also stated: "[W]here one party steadfastly seeks agreement over a specific term, and the party seeking to enforce the contract knew or should have known that such an agreement was never reached, the contract will not be enforced." *Id.* at 1551 n.4 (citations omitted). As discussed above, Local 234 repeatedly sought Defendant's agreement to its standard CBA. Similarly, Defendant repeatedly refused to agree to the standard CBA and proposed a one-job agreement. Without deciding that Local 234 "knew or should have known" that Defendant never agreed to the standard CBA, the Court does find that there are material disputes of fact related to this issue.

Even considering the liberal federal policy regarding collective bargaining agreements, *see id.* at 1550, at the summary judgment stage, the Court cannot conclude that the scope of the parties' agreement extended beyond one project. Accordingly, summary judgment on this issue is improper.

11

## B.     Other Issues

The first affirmative defense raised by Defendant is that "[a] condition precedent for the creation of Defendant's legal obligations under the [CBAs] did not occur in that there was no 'written application to' and/or 'approval of the Union' for the Defendant to become a party to the [CBA] as expressly required by the terms of the [CBA]."  (Doc. 25 at 2.)  Defendant has also raised an affirmative defense, titled "Avoidance of Contract Based on Mistake."  (Doc. 25 ta 3.)  It asserts that "Defendant made application to the Union to become a party to the [CBA] on the mistaken understanding that Defendant's legal obligations under the [CBA] was limited in scope and duration to a single project."  (*Id.*)  Defendant continues:

> This mistake was of such importance to Defendant that a reasonable person in the same situation as Defendant would not have made application to become a party to the [CBA], and Plaintiffs knew or should have known of the mistake and it was contrary to reasonable commercial standards of fair dealing to leave Defendant under the mistaken understanding.

(*Id.*)

Plaintiffs argue that neither of these "is a valid defense to the claims made by the Trustees on behalf of the Welfare Funds," and seek summary judgment to that effect. (Doc. 45 at 6.)  The Court recognizes the significant body of federal law Plaintiffs cite to the effect that certain defenses do not apply to trustees of employee benefit funds even if those defenses apply to the union itself.  *See, e.g.*, *Cent. States, Se. and Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148 (7th Cir. 1989); *Bituminous Coal Operators' Ass'n, Inc. v Connors*, 867 F.2d 625 (D.C. Cir. 1989).

However, Plaintiffs do not cite any binding authority in their favor, and the Court is not aware of any, that addresses these particular affirmative defenses. Moreover, it does not appear that granting the Motion with respect to these affirmative defenses would have any substantial effect on the admissibility of evidence in this case since there is a great deal of overlap between these defenses and the remaining issues in the case. Accordingly, Plaintiffs are not entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a).

Plaintiffs also argue that "[p]arol evidence is not admissible to vary the terms of the CBA or in support of Brencorp's argument that the CBAs were only for one specific project." (Doc. 45 at 6.) However, the rule against parol evidence applies only to agreements that have been reduced to writing. *See, e.g.*, *Waggoner v. Dallaire*, 649 F.2d 1362 (9th Cir. 1981). One of the issues in this case is whether Defendant entered into a written agreement in the first place. The Court sees no reason to disallow parol evidence given the issue whether Defendant is bound by the CBA at all, either by its conduct or by the signature of Welchel. The Court can determine the effect of any such evidence depending on its findings. Accordingly, Plaintiffs are not entitled to judgment as a matter of law on this issue either.

**V.    Conclusion**

For the reasons stated herein, the Motion (Doc. 45) is due to be denied.

Accordingly, it is **ORDERED**:

The Motion (**Doc. 45**) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, on August 26, 2011.

_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:   Counsel of Record