UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

W.W. GAY, *et al.*, as Trustees of the
Jacksonville Plumbers & Pipefitters
Local Union 234 Fringe Benefit Funds,

           Plaintiffs,

v.                                          CASE NO. 3:09-cv-1002-J-JBT

BRENCORP, INC., a Georgia
corporation,

           Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiffs' Amended Motion to Compel Discovery Responses ("the Motion") (Doc. 72). The Motion requests an order compelling discovery responses from Defendant and awarding attorney's fees and costs. (*Id.*) Defendant filed a response in opposition to the Motion ("the Opposition"). (Doc. 74.) For the reasons stated herein, the Motion is due to be **GRANTED in part and DENIED in part**. Defendant will be ordered to produce the requested documents identified herein by March 12, 2012. In addition, the Court will order Defendant to show cause why it should not be required to pay Plaintiffs' reasonable expenses associated with filing the Motion on or before March 16, 2012. In light of the Court's ruling on the Motion, the Court will also *sua sponte* extend several of the case management deadlines.

**I.    The Subject Discovery**

So that Plaintiffs can perform the accounting to which they are entitled (Doc. 69), Plaintiffs seek an order compelling Defendant to produce the following

documents:

1. List of all Brencorp employees (including job titles) that worked in Local 234 Jurisdiction from August 3, 2007 to present.
2. All Time Cards or Time Records, Payroll Journals, Payroll Registers, Employee Earnings Records, Compensation Pay Rates, and Personnel Files for Brencorp employees that worked in Local 234 Jurisdiction from August 3, 2007 to present.
3. Detailed Job Cost Records from August 3, 2007 to present for all worked performed in Local 234 Jurisdiction.
4. Quarterly and Annual Payroll returns for Brencorp for the 2007, 2008, 2009 including but not limited to Federal Forms 941, Georgia and Florida State Unemployment Returns, Federal Forms 940, Employee W-2 Forms and Employer Forms W-3 (we need these to the present date).
5. List of jobs performed by Brencorp in Local 234 Jurisdiction from August 3, 2007 to present[.]
6. Copy of Brencorp Federal and State Income Tax Returns prepared and/or filed for 2007, 2008 and 2009 that include the time frame August 3, 2007 to present (we need these to the present date).
7. Copy of monthly, quarterly, or annual Financial Statements for Brencorp (prepared internally by management or external accountants) that include August 3, 2007 to present[.]
8. The plans, specifications, and bid for each job [Brencorp has] done within the jurisdiction of Local 234 from August 3, 2007 to the present.

(Doc. 72 at 19-21.)[1]

## II. Background

Plaintiffs, who are trustees of the Jacksonville Plumbers & Pipefitters Local Union 234 ("Local 234") Fringe Benefit Funds, brought this action under Sections

---

[1] These items, which appear in Exhibit C to the Motion (entitled "Items Needed from Brencorp for the Audit") (Doc. 72 at 19), are substantially identical to documents requested in Plaintiffs' First Request for Production of Documents ("the First Request") (*id.* at 14-15). As discussed below, Defendant's amended responses to the First Request were due by December 9, 2011.

2

502(a)(3), 502(g)(2), and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145, as well as Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185(a). (Doc. 1 at 1-5.) Plaintiffs assert what is essentially a breach-of-contract claim against Defendant, Brencorp, Inc. ("Brencorp"). Plaintiffs allege that Brencorp was bound by the terms of a collective bargaining agreement ("CBA"), and breached the CBA by performing work within the scope and territory defined in the CBA without using Local 234's labor to perform the work and not making contributions to the Fund based on that work. (Doc. 1 at 1-5.)[2] For relief, Plaintiffs sought, inter alia, "an order permitting Plaintiff[s] to audit the books and records of the Defendant to determine the amount of the contributions due to Plaintiffs" and "damages in the amount of the contributions due." (Doc. 1 at 5.)

In its Order of September 20, 2010, the Court granted Defendant's motion to bifurcate this case, and stayed discovery on all issues other than Plaintiffs' right to an accounting "until that right has been established." (Doc. 36 at 4.) Since that Order, the Court held a bench trial, after which it concluded that "Defendant was bound by the CBA" and "Plaintiffs are entitled to an accounting as requested in the Complaint." (Doc. 69 at 24.)

---

[2] There were actually two CBAs for the period in question. The first expired on August 31, 2007, just a few weeks after it was signed and Defendant's job began. (Doc. 54 at 3.) The second ran from September 1, 2007, through August 31, 2010. (*Id.*) For ease of reference, the Court is referring to them collectively as "the CBA," unless otherwise specified.

At the time the Court bifurcated this case and stayed discovery on all issues other than Plaintiffs' right to an accounting, Plaintiffs had already served Defendant with discovery requests on other issues, including the issues of breach of contract and damages. Among those requests was the First Request (Doc. 27-1), which Plaintiffs served on February 8, 2010. Thus, that discovery was stayed until the Court entered its November 9, 2011 Order, which stated: "Discovery on the issue of damages is hereby allowed, effective immediately. **On or before December 9, 2011**, Defendant shall provide amended responses to all of Plaintiffs' discovery that was stayed . . . ." (Doc. 63 at 2.) Therefore, pursuant to that Order, all documents responsive to the First Request that Defendant had not already produced were due by December 9, 2011. The Motion asserts, and Defendant does not contest, that

> [a]s of February 15, 2012 (the date of filing [the Motion]), the Defendant still has not provided any amended responses to Plaintiffs' previously filed discovery requests nor has the [D]efendant produced a single document (or even a single piece of paper) as ordered by the Court in its November 9, 2011 Order.

(Doc. 72 at 2-3 (emphasis added).)

On December 19, 2011, in an apparent effort to clarify for Defendant which documents they still needed, Plaintiffs served on Defendant Plaintiffs' Fourth Request for Production of Documents ("the Fourth Request") (Doc. 67 at 11-15). Each item in the Fourth Request was duplicative of items already included in the First Request, but which were apparently never produced by Defendant. Defendant's response to the Fourth Request was due by January 23, 2012. *See*

4

FED. R. CIV. P. 34(b). Defendant did not serve a response to the Fourth Request until February 15, 2012, after the Motion was filed. (Doc. 74-1.) In short, it appears that Defendant has violated previous Court orders and completely failed to engage in good faith discovery, necessitating the filing of the Motion.[3]

III. **Analysis**

The permissible scope of discovery is stated in Rule 26:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1).

The Court has held that Defendant was bound by the CBA and Plaintiffs are entitled to an accounting as requested in the Complaint. (Doc. 69.) All of the subject discovery sought by Plaintiffs appears reasonably calculated to lead to the discovery of admissible evidence on the issues of the extent of the breach and/or damages. In fact, Plaintiffs have provided the unrebutted affidavit of Charles Shoffner, a licensed Certified Public Accountant and auditor for the subject funds, in which he states that all of the documents sought in the Motion "are necessary to properly perform the audit according to accepted standards . . . ." (Doc. 72 at 22-23.) Thus,

---

[3] The Handbook on Civil Discovery Practice in this Court provides that "[d]iscovery in this district should be practiced with a spirit of cooperation and civility." Middle District Discovery (2001) at 1.

with the limited exception discussed below, the Motion is due to be granted.

### A. Scope of the Accounting

#### 1. Subject Matter

After failing to timely respond to document requests, Defendant argues for the first time that Plaintiffs are entitled to discover only "payroll records." (Doc. 74 at 1-3.) Defendant argues that the language of the CBA controls and that the pertinent language of the CBA limits the documents Plaintiffs may discover to "payroll records." (*Id.*) Defendant cites two cases in support of its position. The Court rejects this argument.

The language of the CBA does not limit Plaintiffs' accounting to only payroll records. The applicable provision of the CBA provides the following:

> The Trustees . . . of the several funds . . . may, for the purpose of collecting any payments required to be made to such funds including damages and costs, and for the purpose of enforcing rules of the Trustees or Directors concerning the inspection and audit of Payroll records, seek any appropriate legal, equitable and administrative relief
> . . . .

(Doc. 1 at 36-37.) Therefore, per the plain language of the CBA, Plaintiffs are entitled to "seek any appropriate legal, equitable and administrative relief" for the purpose of collecting any payments required to be made to the subject funds. They have done just that, and are entitled to the equitable relief of an accounting. The Court has discretion in determining the appropriate scope of an accounting. *See Rasmussen v. Cent. Fla. Council Boy Scouts of Am., Inc.*, 412 F. App'x 230, 233

(11th Cir. 2011); *Godfrey v. Bellsouth Telecomm., Inc.*, 89 F.3d 755, 757 (11th Cir. 1996). Thus, Plaintiffs are not limited by the CBA to discovering only "payroll records."

Further, the cases cited by Defendant do not support its argument that Plaintiffs are entitled to discover only payroll records. In *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, the parties' entire dispute was over the permissible scope of the trustees' right to an accounting under the terms of the trust agreements. 472 U.S. 559 (1985). After the defendant–employer refused to permit the plaintiff–trustees to inspect certain records during one of the trustees' "random audits," the trustees filed suit for the limited purpose of enforcing their rights to inspect under the terms of the agreements. *Id.* at 563-64. The trustees did not allege that any money was actually owed by the defendant and, accordingly, sought only an "'order permitting its auditors to conduct an independent verification of [the defendant's] complete payroll records in order to determine whether the duties and status of each of its employees has been accurately reported by [the defendant].'" *Id.* at 563-64. The plaintiffs in *Trustees of the Plumbers and Pipefitters Local 123 Pension Fund v. Dale C. Rossman, Inc.* filed suit under the same circumstances and sought similarly limited relief as in the *Central States* case. 2006 WL 2523139 (M.D. Fla. Aug. 30, 2006)

Here, Plaintiffs have prevailed on their right to an accounting. Furthermore, they have also sought damages. The Court has held that Defendant was bound by

7

the CBA and Plaintiffs are entitled to an accounting and damages as requested in the Complaint. (Doc. 69.) As stated above, Plaintiffs have provided Charles Shoffner's unrebutted affidavit, in which he states that all of the documents sought in the Motion "are necessary to properly perform the audit according to accepted standards . . . ." (Doc. 72 at 22-23.) Therefore, even if Plaintiffs had no contractual right to the subject discovery, they would be entitled to discover those items because they appear reasonably calculated to lead to the discovery of admissible evidence on the remaining issues in this case.

### 2. Time

As reflected by the language of the subject discovery, Plaintiffs seek production of documents extending beyond the term of the Second CBA, which expired on August 31, 2010. (*See, e.g.*, Doc. 72 at 1 ("List of all Brencorp employees (including job titles) that worked in Local 234 Jurisdiction from August 3, 2007 *to present*.").) Plaintiffs assert that Defendant "is still a party to Local 234's CBA." (*Id.* at 5.) They base this assertion on, inter alia, the fact that the CBA contains the following automatic renewal provision:

> "This Agreement which is in force and effect until 8-31-2010, shall automatically renew itself for an additional period of one (1) year from the termination date hereof unless either party serves written notice upon the other sixty (60) days prior to its expiration date requesting that it be amended or terminated."

(Doc. 72 at 5 (quoting the CBA; Doc. 1 at 44).)

At issue in both the pleadings and the trial in this case were only the two

8

CBAs, collectively with a term ending August 31, 2010. (Doc. 1; Doc. 69.) Any assertion that Defendant is bound to a CBA beyond that term is beyond the scope of this case. Accordingly, the Court will not order Defendant to produce documents pertaining to the period after August 31, 2010, and in this regard the Motion will be denied.

### B. Protective Order

Plaintiffs assert, and Defendant does not deny, that "[Plaintiffs' counsel] offered to consent to a protective order and requested counsel for the Defendant to submit a proposed protective order . . . , but counsel for the Defendant has not done so and has orally advised [Plaintiffs' counsel] that the Defendant would not be submitting a protective order to the Court." (Doc. 72 at 3.) One week prior to filing the Motion, Plaintiffs made the following offer:

> We will agree the records will be used only for this litigation and only [be] seen by Plaintiff[s'] attorneys, the auditor(s), and by no more than two persons from labor and two person from management (or designated by labor or management), who may need to review them to determine how much of the work was covered by the CBA. All persons seeing the records will keep the contents confidential and not use them for any purpose whatsoever other than for what is need in this litigation.

(Doc. 72 at 16.)

Although Plaintiffs clearly made reasonable attempts to resolve this issue and accommodate Defendant's concerns, it appears that Defendant took no steps to negotiate an appropriate confidentiality/protective order with Plaintiffs. However, again at the eleventh hour in the Opposition, Defendant raises confidentiality

9

concerns regarding one of the named Plaintiffs in this case, W.W. Gay, who is alleged to be "a direct competitor of Defendant and would gain a competitive advantage with a review of the documents and material sought to be included in the audit process." (Doc. 74 at 4.) Defendant requests that the Court "bear in mind the status of the named Plaintiff, W.W. Gay, as the CEO of Defendant's competitors." (*Id.* at 5.)

Although the Court is under no obligation to do so, it will restrict access to the documents, as ordered below.

### C. Payment of Expenses

Rule 37(a)(5) of the Federal Rules of Civil Procedure governs the award of expenses in the context of a motion to compel discovery. It provides in relevant part: "If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(C).

In light of the circumstances regarding the Motion, including the fact that Plaintiffs have substantially prevailed, an award of fees and costs to Plaintiffs, pursuant to the above Rule, may be appropriate. However, in accordance with that Rule, Defendant and/or its attorney will have "an opportunity to be heard" on that issue.

D. **Case Management**

In light of the Court's ruling on the Motion, the Court will *sua sponte* extend several of the case management deadlines, as ordered below.

Accordingly, it is **ORDERED**:

1. The Motion (**Doc. 72**) is **GRANTED in part and DENIED in part** as follows: **On or before March 12, 2012**, Defendant shall produce all of the requested documents to Plaintiffs, except that such discovery shall be limited to the time period ending August 31, 2010. **Failure to produce the subject documents may be treated as contempt of court.**

2. Plaintiffs and their attorneys shall keep all documents produced under this Order confidential to Plaintiffs (other than Plaintiff W.W. Gay, his agents, and employees, who shall not view or have access to the documents), their legal counsel of record, legal support staff, the auditor(s), and no more than two persons from labor and two persons from management (or designated by labor or management). Plaintiff W.W. Gay, his agents, and employees shall not be allowed to view or have access to the subject documents. The use of the information provided pursuant to this Order is **strictly limited** to the instant litigation. Failure to adhere to the terms of this Court imposed protective order may lead to the imposition of sanctions on the non-compliant party or individual. Should Plaintiffs determine further disclosure of the subject information to be necessary for litigation purposes, Plaintiffs shall first seek consent of opposing counsel. In the absence of agreement to further

disclosure, an appropriate motion shall be made to the Court. Upon conclusion of this litigation, all documents obtained pursuant to this Order shall be returned to Defendant **within thirty (30) days** of final judgment.

3. **On or before March 16, 2012**, Defendant shall show cause in writing why it should not be ordered to pay Plaintiffs' reasonable expenses, including attorney's fees, incurred in making the Motion. Defendant's response shall not exceed ten (10) pages. If the parties are able to resolve the issue of expenses, they should file a joint notice so indicating by that same date.

4. The Supplemental Case Management and Scheduling Order and Referral to Mediation (**Doc. 66**) is **AMENDED** to the extent that Plaintiffs' expert report disclosure deadline is extended to **April 11, 2012**; Defendant's expert report disclosure deadline is extended to **April 26, 2012**; Plaintiffs' rebuttal expert report deadline is extended to **May 11, 2012**; and the discovery deadline is extended to **June 1, 2012**. These extensions shall not serve as the basis for any further extensions of case management deadlines.

**DONE AND ORDERED** at Jacksonville, Florida, on February 29, 2012.

_/s/ Joel B. Toomey_
JOEL B. TOOMEY
United States Magistrate Judge

Copies to: Counsel of Record